UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                                    :
DAVID RAMOS,                                        :
                                                    :
                              Petitioner,           :
                                                    :
                                                    :            23-cv-4762 (LJL)
              -v-                                   :
                                                    :          OPINION AND ORDER
SUPERINTENDENT GOODMAN, GREENE CORR.                :
FAC.,                                               :
                                                    :
                              Respondent.           :
                                                    X
-------------------------------------------------------------------

LEWIS J. LIMAN, United States District Judge:

 David Ramos ("Petitioner") petitions this Court, pursuant to 28 U.S.C. § 2254, for a writ

of habeas corpus offering him relief from his New York State conviction and sentence.  Dkt. No.

11.

 For the following reasons, the petition is denied.

## BACKGROUND

 Petitioner was charged in an eight-count indictment (the "Indictment") on July 20, 2015,

and tried in New York State Supreme Court, New York County, in April and May 2018.  Dkt.

No. 12 at ECF pp. 6–7.[1]  The Indictment charged him with two counts of criminal possession of

a weapon in the second degree in violation of New York Penal Law §§ 265.03(1)(b) and

265.03(3), one count of reckless endangerment in the first degree in violation of New York Penal

Law § 120.25, one count of criminal possession of a controlled substance in the third degree in

violation of New York Penal Law § 220.16(1), one count of criminal possession of a controlled

---

[1] The Court refers to Petitioner as "Petitioner" throughout this opinion, including when
discussing prior proceedings in which he was a defendant, unless the reference is contained in a
quotation.

substance in the fifth degree in violation of New York Penal Law § 220.06(1),[2] one count of criminal possession of marijuana in the second degree in violation of New York Penal Law § 221.25, and two counts of criminally using drug paraphernalia in the second degree in violation of New York Penal Law §§ 220.50(2) and 220.50(3).  *Id*.; Dkt. No. 13-2 at ECF pp. 91–92; Dkt. No. 13-3 at ECF pp. 1–2.

The charges were based on gunshots that were fired on the early morning of June 22, 2015, from a building at 2089 Amsterdam Avenue.  The gunshots hit a school bus, which was en route to pick up its first children of the day, as the bus was travelling south on Amsterdam Avenue between 163rd and 164th Streets.  *Id*. at ECF p. 7.  The evidence at trial established, to the satisfaction of the jury, that Petitioner fired the three shots that hit the bus.  Among other things, the shots emanated from an apartment where Petitioner was residing; the superintendent of the building across from Petitioner's building identified him as the shooter; Petitioner fled from the police after the police officers knocked on the door of his apartment; and expert evidence established that the loaded firearm contained within a bag thrown from the window of his apartment after the police approached was the firearm from which the shots emanated.[3]  *Id*. at ECF pp. 8–10.

At trial, the bus driver and the bus attendant testified to the shots fired at the bus.  Dkt. No. 13-4 at ECF pp. 415–18, 443–46.

King David Meekins, the superintendent for the building across the street at 2094 Amsterdam Avenue, identified Petitioner as the shooter.  *Id.* at p. 452.  Meekins was on the

---

[2] This count was dismissed prior to trial.  Dkt. No. 12 at ECF p. 6.
[3] The facts are "summarize[d] in the light most favorable to the verdict."  *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012) (per curiam); *Alexander v. Royce*, 2021 WL 1192022, at *1 (S.D.N.Y. Mar. 30, 2021).

sidewalk taking out the trash when he heard the gun shots on the morning of June 22, 2015. *Id.* at pp. 448–51. He immediately looked in the direction of the shots and saw Petitioner holding what Meekins recognized to be a semi-automatic weapon and standing for about 15 to 30 seconds in an open window with a flowerpot on the second floor of the building at 2089 Amsterdam Avenue, which was across the street. *Id.* at pp. 452–54. When officers arrived a few minutes after the shots were fired, Meekins pointed them to the window and identified the person he saw in the window as a light-skinned Hispanic male. *Id.* at p. 459. Meekins testified that approximately 45 minutes later he saw the officers bringing the Petitioner out of the building in handcuffs. He then volunteered that he told one of the officers, "That's the guy." *Id.* at p. 460. Meekins identified Petitioner at trial as the individual he saw shoot the gun from the window. *Id.* at p. 452.

Three police officers who responded to the scene also testified at trial. Police Officer Mark Ruppert testified that he arrived at the scene only minutes after the shots were fired and entered the building at 2089 Amsterdam Avenue after being informed by Meekins that a light-skinned Hispanic male stuck his arm out of the second story window and fired three shots. *Id.* at pp. 478–82. He observed three shell casings on the sidewalk underneath the window. *Id.* at pp. 481, 533. Ruppert testified that he contacted the Emergency Services Unit ("ESU") to enter the apartment and that, while ESU was preparing to make entry, he saw a small black garbage bag fall out of the window and Petitioner jump after it out of the window to the area below. *Id.* at pp. 486–88, 538, 540. At the time, Ruppert was waiting in the hallway stair area of the building between the first and second floors. *Id.* at pp. 489–90. Ruppert chased the Petitioner after seeing him flee through the window, apprehended him, and placed him under arrest. *Id.* Ruppert thereafter entered the apartment. He observed the window with the flowerpot, and observed that

there were no Hispanic males inside the apartment. *Id.* at pp. 491, 529. After going back outside, Ruppert was handed the object in the black bag dropped from the building, which was a black high-point firearm with a magazine and two bullets. *Id*. at pp. 491–92. At 4:30 p.m. that day, Ruppert executed a search warrant on the apartment and recovered, among other items, mail belonging to Petitioner and male clothing. *Id.* at pp. 497, 503, 510–11, 547. Ruppert also recovered marijuana. *Id*. at pp. 501–02.

A firearm and ammunition expert testified that the firearm found inside the bag was operable, as was a cartridge of case ammunition found with the firearm. *Id.* at pp. 731, 732, 736. A ballistics expert testified that three shell casings found on the ground below the window with the flowerpot were fired from the same firearm found in the bag. *Id.* at pp. 744, 750. Finally, surveillance footage showed Petitioner entering the apartment from which the shots were fired shortly before they were fired.[4]

The defense called two witnesses. One of the witnesses was a New York Police Department detective who offered testimony intended to contradict the testimony that one of Petitioner's neighbors heard fighting between Petitioner and his girlfriend before the firearm was discharged. *Id.* at p. 763. The other witness was Petitioner's girlfriend. She corroborated that Petitioner lived in the apartment with the window with the flowerpot, *id.* at pp. 811–12. She testified that she entered the apartment with Petitioner shortly before the incident, *id.* at p. 774, that Petitioner was very drunk at the time, *id.* at pp. 775, 777, that she was not arguing with him at the time, *id.* at p. 776, that she then left the apartment before the incident and when she returned to the apartment after hearing the gunshots she did not see a gun in his possession and

---

[4] Petitioner conceded that he had a prior felony conviction. Dkt. No. 13-4 at ECF pp. 117–18, 755.

never saw a gun in his possession, *id*. at pp. 784–85, that Petitioner appeared "normal," *id*., and that Petitioner then jumped out of the window after the police knocked on the door, *id.* at pp. 786–87.

Petitioner was convicted on May 10, 2018 on the charges of criminal possession of a weapon in the second degree (possession of a loaded firearm by a prior felon) in violation of Penal Law § 265.03(3), reckless endangerment in the first degree in violation of Penal Law § 120.25, and criminal possession of marijuana in the second degree in violation of Penal Law § 221.25.  Dkt. No. 13-5 at ECF pp. 150–54.  He was acquitted of the charges of possession of a loaded firearm with intent to use unlawfully, possession of a controlled substance in the third degree, and the two drug paraphernalia charges.  *Id*.  He was sentenced on November 6, 2019, to a seven year determinate term of imprisonment and a five year term of post-release supervision on the weapon possession charge, an indeterminate term of imprisonment of three and one-half to seven years on the reckless endangerment charge, and an indeterminate term of imprisonment of two to four years on the marijuana charge, all to run concurrently.[5]  Dkt. No. 12 at ECF p. 14.

Petitioner appealed to the Appellate Division, First Department, and his conviction was affirmed on February 1, 2022.  *People v. Ramos*, 162 N.Y.S. 3d 334 (1st Dep't 2022).

The New York Court of Appeals denied Petitioner leave to appeal on March 22, 2022, *People v. Ramos*, 38 N.Y.3d 953 (N.Y. 2022), and denied his application for reconsideration on July 22, 2022, *People v. Ramos*, 38 N.Y.3d 1135 (N.Y. 2022).

---

[5] Shortly before the jury returned its verdict, Petitioner failed to appear and the Court issued a warrant for his arrest.  He was not apprehended until 18 months later.  Dkt. No. 12 at ECF p. 14. The court also sentenced Petitioner to a year in jail for violation of probation, because he committed the offenses while on probation for a prior felony conviction.  *Id*. at ECF pp. 14–15.

On October 22, 2022, Petitioner filed a motion pursuant to New York State Criminal Procedure Law ("N.Y. C.P.L.") § 440.46-a(2) to vacate and expunge his conviction for possession of marijuana in light of the passage of New York's Marihuana Regulation and Taxation Act, under which it is no longer unlawful to possess up to five pounds of marijuana. Dkt. No. 12 at ECF pp. 16–17; Dkt. No. 13-3 at ECF pp. 148–72.  The motion was granted with the prosecution's consent.  Dkt. No. 12 at ECF p. 17; Dkt. No. 13-3 at ECF pp. 149, 173.

## PROCEDURAL HISTORY

Petitioner filed this Petition on June 5, 2023.  Dkt. No. 1.  Petitioner raised two grounds for relief: (1) his Fifth and Fourteenth Amendment rights were violated when the trial court admitted into evidence the suggestive identification of Meekins, the superintendent, without conducting a pretrial hearing to determine its reliability;[6] and (2) his Fourth, Fifth and Fourteenth Amendment rights were violated when the trial court failed to conduct a *Franks* hearing with respect to the warrant application to search his apartment.  *Id.* at ECF pp. 8–11.

On June 8, 2023, the Court issued an Order directing Respondent to respond to the motion.  Dkt. No. 5.

On August 31, 2023, Petitioner filed an Amended Petition.  Dkt. No. 11.  Petitioner added a third ground for relief—that his Fourteenth Amendment rights were violated when the trial court struck from the Indictment language that his possession of the firearm was illegal because it was not in his "home or place of business."  *Id.* at ECF pp. 12–13.[7]

On October 6, 2023, the Attorney General of the State of New York filed a Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus.  Dkt. No. 12.  That same day,

---

[6] Petitioner also alleged that the admission of the identification testimony violated New York State law.  Dkt. No. 1 at ECF pp. 5–7.
[7] Petitioner also alleged that the deletion of language from the Indictment violated his rights under New York State law and the New York State Constitution.  Dkt. No. 11 at ECF pp. 12–13.

Respondent also answered the Petition and lodged with the Court the record of the state court proceedings.  Dkt. No. 13.  On November 3, 2023, Petitioner filed a Memorandum of Law in Reply to the Opposition for a Writ of Habeas Corpus.  Dkt. No. 15.

## DISCUSSION

Section 2254 of Title 28 of the United States Code provides a means of relief for "a person in custody pursuant to the judgment of a State court . . . on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The Court's review of Petitioner's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, which provides for a deferential review of a state court's ruling.  *See Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009).  The AEDPA in relevant part reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has "interpreted § 2254(d)(1) as giving independent meanings to the 'contrary to' and 'unreasonable application' clauses."  *Overton v. Newton*, 295 F.3d 270, 275 (2d Cir. 2002) (citing *Williams v. Taylor*, 529 U.S. 362, 404 (2000)).  "A state court decision is 'contrary to' clearly established federal law as determined by the Supreme Court 'if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of

law or if the state court decides a case differently than [the Supreme Court] has on a set of

materially indistinguishable facts.'" *Id.* (citing *Williams*, 529 U.S. at 413). "A state court

decision involves an 'unreasonable application' of clearly established federal law as determined

by the Supreme Court when 'the state court identifies the correct governing legal principle from

[the Supreme] Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case.'" *Jones v. West*, 555 F.3d 90, 96 (2d Cir. 2009) (quoting *Williams*, 529 U.S. at

413). Such application of federal law must be "'objectively unreasonable,' not merely wrong;

even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting

*Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)). "The state court decision must be 'so lacking

in justification that there was an error well understood and comprehended in existing law beyond

any possibility for fair minded disagreement.'" *Woods v. Etherton*, 578 U.S. 113, 117 (2016)

(quoting *White*, 572 U.S. at 420); *see also Sorto v. Herbert*, 497 F.3d 163, 169 (2d Cir. 2007)

("[I]t is well-established in this Circuit that the 'objectively unreasonable' standard of §

2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in

order to obtain *habeas* relief."). The Supreme Court has held that Section 2254(d)(1) "would be

undermined if habeas courts introduced rules not clearly established under the guise of

extensions to existing law." *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004).

  "A state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear

and convincing evidence.'" *Drake*, 553 F.3d at 239 (quoting 28 U.S.C. § 2254(e)(1)). A state

court's factual determination may not be deemed unreasonable "merely because [a reviewing

court] would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576

U.S. 305, 313–14 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). Instead, Section

2254(d)(2) requires a reviewing court to "accord the state trial court substantial deference." *Id.*

at 314.  If "[r]easonable minds reviewing the record might disagree about the finding in question,

on habeas review that does not suffice to supersede the trial court's . . . determination."  *Id.*

(alterations in original) (citation omitted).

The Court considers in turn each of Petitioner's claims.[8]

## I.    Introduction of Identification Testimony

Petitioner claims that his due process and equal protection rights were violated when the

trial court admitted Meekins's testimony that he identified Petitioner at the scene to the police.

At trial, Meekins testified that, after he had initially identified the person in the window holding

a gun as a light-skinned Hispanic male, he saw Petitioner as Petitioner was removed from the

apartment building and taken to a police car and told an unidentified member of the police,

"That's the guy."  No *Wade* hearing was conducted into the reliability of the identification.[9]

Petitioner states that 45 minutes passed before Petitioner was "paraded" by the police in front of

Meekins and that given this passage of time, the identification by Meekins amounted to a show

up identification arranged by the police.  Dkt. No. 11 at ECF pp. 5–6.

The Appellate Division, First Department, rejected this claim on the ground that the

"witness's spontaneous, happenstance identification of defendant to police officers, while

defendant was being led out of his building, was purely civilian-initiated and not police-

---

[8] The Court construes Petitioner's pro se pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), to raise the "strongest arguments they suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006).

[9] The trial court determined that there was no need for a *Wade* hearing and that Meekins could testify about his observations at the time, but that the hearsay statement of "That's the guy" would not be admitted and should not be elicited.  Dkt. No. 13-4 at ECF pp. 434–35.  However, in response to the question "did you see the person you saw shooting downstairs outside of the building after that?," Meekins testified that he did so and then volunteered that he told an unidentified officer "That's the guy." Defense counsel objected on the basis of "leading" but did not press the issue further, and the court instructed Meekins to testify only to his observations not what he said.  *See* Dkt. No. 12 at ECF pp. 19–21; Dkt No. 13-4 at ECF p. 460.  No motion was made to strike the testimony or for a limiting instruction.

arranged," and therefore he was not entitled to a pretrial hearing.  It also found that "any error in admitting the identification testimony was harmless" because it "added little or nothing to the People's overwhelming case."  *Ramos*, 162 N.Y.S.3d at 334.  The state court's decision was not contrary to clearly established law as determined by the Supreme Court, nor does it reflect an unreasonable application of clearly established law.[10]

The due process clause protects against police identification procedures that are both unduly suggestive and that create a "'substantial likelihood of misidentification.'"  *Sexton v. Beaudreaux*, 585 U.S. 961, 965–66 (2018) (quoting *Neil v. Biggers,* 409 U.S. 188, 201 (1972)).  When law enforcement acts to arrange or solicit an identification, "the Court must conduct the familiar two-step analysis as to (1) whether the procedures were unduly and unnecessarily suggestive, and (2) if so, whether the identifications are nonetheless independently reliable."  *United States v. Little*, 640 F. Supp. 3d 306, 316 (S.D.N.Y. 2022) (citing *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001)).  However, "the due process considerations given to identification

---

[10] Respondent also argues that Petitioner waived any objection to the identification by not moving to strike or asking the court to take any other remedial action during trial and that this amounts to an adequate and independent state procedural ground precluding federal habeas relief. Dkt. No. 12 at ECF pp. 21–22.  Respondent points out that the Appellate Division noted that Petitioner "had the opportunity to develop the record further in this regard, but did not do so." *Id*. (citing *Ramos*, 162 N.Y.S. at 337).  The Court does not understand the Appellate Division's comment to reflect that Petitioner's objection was unpreserved, but rather to be a reflection on the quality of the evidence presented by Petitioner in support of his claim.  In fact, the Appellate Division went on to consider Petitioner's claim on the merits. *Ramos*, 162 N.Y.S. at 337.  *Compare People v. Singh*, 562 N.Y.S. 2d 50 (1st Dep't 1990) (rejecting claims on appeal as unpreserved and therefore waived where there was no objection nor motion for mistrial).  The Supreme Court has held that the federal court may review a habeas petition  where the state court decision appears to rest primarily on federal law or is interwoven with federal law unless the state court clearly and expressly relied on an adequate and independent state ground.  *See Aparicio v. Artuz*, 269 F.3d 78, 92 (2d Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 730–36 (1991)); *see also Florida v. Powell*, 559 U.S. 50, 56–57 (2010); *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (Sotomayor, J.).  In this case, the Appellate Division's decision appears to rest on or be intertwined with application of *United States v. Wade*, 388 U.S. 218 (1967), and there is no clear reliance on waiver as an adequate and independent state ground.

procedures do not extend 'to cases in which the suggestive circumstances were not arranged by law enforcement officers.'" *Dixson v. Lamanna*, 2022 WL 19180, at *19 (S.D.N.Y. Jan. 3, 2022) (quoting *Perry v. New Hampshire*, 565 U.S. 228, 232–33 (2012)). In *Perry*, the Supreme Court clearly held that the right to due process is implicated only when the identification procedures were arranged by law enforcement. *See Little*, 640 F. Supp. 3d at 316; *United States v. Eley*, 2022 WL 1608068, at *5 (S.D.N.Y. May 20, 2022). "When no improper law enforcement activity is involved, . . . it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." *Perry*, 565 U.S. at 233.

The Appellate Division's decision that Petitioner was not entitled to a *Wade* hearing because Meekins's identification was spontaneous and civilian-initiated thus was entirely consistent with federal law and did not represent an unreasonable application of that law. A civilian's spontaneous identification of a suspect is the paradigmatic example of an identification procedure that is not arranged by law enforcement. *See, e.g.*, *Little*, 640 F. Supp. 3d at 316–17 (identification not arranged by law enforcement where witness on his own initiative approached arrest scene and identified defendant, even when witness had been in the company of officers earlier during the initial canvass for the subject); *Branch v. Marshall*, 2010 WL 5158632, at *16 (S.D.N.Y. Oct. 12, 2010) (identification not arranged by law enforcement when witness approached officers on night of crime and identified defendant as person who had shot at him), *report and recommendation adopted*, 2010 WL 5158633 (S.D.N.Y. Dec. 16, 2010). *Accord People v. Battle*, 609 N.Y.S.2d 716, 717 (4th Dep't 1994) (identification not arranged by police

where eyewitness gave police who came to the scene a description of defendant and then later, when he drove around the block and saw police holding defendant, called to police "That's them"); *People v. Gonzalez*, 622 N.Y.S.2d 29, 30 (1st Dep't 1995) (eyewitness identification to arriving police officers at scene of crime not police arranged).

The state court decision also was based on a reasonable determination of the facts in light of the evidence presented in the state court proceeding. As the Appellate Division noted, Petitioner had the opportunity to develop the facts at the trial. *Ramos*, 162 N.Y.S. at 337. The undisputed evidence established that Meekins volunteered to an unidentified police officer that the individual he saw being taken out of the apartment building was the same individual he saw pointing a gun from the window. Dkt. No. 13-4 at ECF pp. 449–52, 459–60. The police did not remove Petitioner from the apartment building for the purposes of having a witness make an identification, and the officers neither asked Meekins to remain at the scene to make an identification nor asked him to make an identification. *Compare Brisco v. Ercole*, 565 F.3d 80, 84 (2d Cir. 2009) (discussing show-ups). The unrebutted testimony showed that Meekins was not detained by police to make an identification, but rather continued working at his job as superintendent of the building across the street and recognized Petitioner as the shooter only when the officers happened to bring Petitioner to the police car as he was standing nearby. Dkt. No. 13-4 at ECF pp. 459–60. Petitioner points out that the area was secured, Dkt. No. 15 at ECF p. 6, but Meekins lived at and was the superintendent of the building across the street, so he would not have been barred from accessing the area and there is nothing suspicious about his being present. Dkt. No. 13-4 at ECF pp. 448–50.[11]

---

[11] The Court may not hold an evidentiary hearing as suggested by Petitioner. Dkt. No. 15 at ECF p. 6. Because this claim was adjudicated on the merits in the state proceeding, the Court is limited in its consideration of Petitioner's claim under 28 U.S.C. § 2254(d) to the record before

In any event, the state court found that any error in admitting Meekins's testimony without having conducted a *Wade* hearing was harmless.  On a motion for relief under Section 2254, the Court applies a "forgiving standard of review" to determine whether a constitutional error was harmless.  *Fry v. Piler*, 551 U.S. 112, 116 (2007).  "Under that standard, an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Id*. (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)).

Petitioner could not show that the admission of Meekins's statement was other than harmless error under this standard.  Meekins identified Petitioner at trial as the individual who he saw pointing a gun at the window at the time of the shooting and testified at trial that he saw an individual matching Petitioner's description fire the shots and gave that description to the police and that he then saw the shooter again when the police brought him out of the apartment building and put him in the police car.  Dkt. No. 13-4 at ECF pp. 452, 459–61.  He also offered the unrebutted testimony that the gunshots came from the apartment with the flowerpot in the window and it was unrebutted that that apartment belonged to Petitioner.  *Id*. at ECF pp. 451–52.  Moreover, entirely independent of Meekins' testimony, the conviction was supported by the testimony of Officer Ruppert that, when the police knocked on the door of Petitioner's

the state court.  *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Even if the claim had not been adjudicated on the merits, federal habeas courts are limited to the record before the state court in "all but [] extraordinary cases."  *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022).  Those extraordinary cases are laid out in 28 U.S.C. § 2254(e), which provides that when a petitioner failed to develop the factual basis of the claim in the state court proceedings, a federal habeas court may hold an evidentiary hearing only when the claim relies on a new rule of constitutional law or a factual predicate that could not have been previously discovered through due diligence and even then, only where the facts underlying the claim would establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.  28 U.S.C. § 2254(e).  Given the extensive evidence establishing Petitioner's guilt, the Court could not hold an evidentiary hearing under § 2254(e), even if the Court were not barred from holding an evidentiary hearing under *Pinholster*, 563 U.S. at 185, and § 2254(d).

apartment, a bag was thrown out of a window containing the firearm used to fire the three shots and that Petitioner then fled out of the window himself. *Id*. at ECF pp. 486–89.[12]  In short, the Appellate Division fairly characterized the evidence against Petitioner as "overwhelming."[13]

## II.    Failure to Hold a *Franks* Hearing

Petitioner claims that his Fourth, Fifth, and Fourteenth Amendment rights were violated when the state court failed to conduct a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), into whether Officer Ruppert made intentionally or recklessly false statements in his affidavit in support of the warrant to search Petitioner's apartment.

In his affidavit in support of the warrant to search Petitioner's apartment, Ruppert stated that he observed "a black bag being thrown from the window of 2089 Amsterdam Avenue, Apartment 1B, and that a light-skinned Hispanic male jumped out of the same window into an alleyway" after officers knocked on the door of the apartment.  Dkt. No. 13-2 at ECF p. 40.  At trial, Ruppert testified that he saw a small black bag fall past a window and "[s]econds after that . . . observed a light-skinned male jump after it and fall through that same opening in the window to the area below."  Dkt. No. 13-4 at ECF p. 487.  He did not testify that he saw the bag being

---

[12] Petitioner argues that the bag was thrown out the window when there were "other suspects" in the stairwell of the building, Dkt. No. 15 at ECF p. 7, but clearly the individuals who were in the stairwell at the time Officer Rupert saw the bag drop could not have been the individuals who dropped that bag.

[13] Petitioner also claims that the prosecution violated N.Y. C.P.L. § 710.30, which requires the prosecution to give notice of the intent to offer at trial testimony regarding an observation of the defendant.  A claim of misapplication of state law, however, is not cognizable on federal habeas review unless the application violates the Constitution, laws, or treaties of the United States.  *See Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002).  "Petitioner does not possess a guaranteed right to advance notice of identification testimony under the Constitution."  *Forino v. Lee*, 2016 WL 7350583, at *11 (E.D.N.Y. Dec. 19, 2016).  "Thus, any possible error by the state court in allowing the identification evidence without a hearing does not give rise to a constitutional violation."  *Id.*; *see also Vasquez v. LaClair*, 2018 WL 3193205, at *8 (E.D.N.Y. June 28, 2018); *Grajales v. Brown*, 2008 WL 2313137, at *4 (E.D.N.Y. June 2, 2008); *Arocho v. Walker*, 2001 WL 856608, at *3 (S.D.N.Y. July 27, 2001).

thrown.  Petitioner claimed on appeal and claims now that the search warrant affidavit was false

because Ruppert did not observe the bag being thrown from the window by Petitioner.  Dkt. No.

11 at ECF pp. 10–11.

The trial court denied Petitioner's request for a hearing, finding that Petitioner had not set

forth sufficient facts to obtain a hearing.  Dkt. No. 13-2 at ECF p. 32.[14]  And the Appellate

Division held that Petitioner was not entitled to a *Franks* hearing because he failed to make a

substantial preliminary showing that the affidavit for a search warrant contained a false statement

that was made either "knowingly and intentionally" or with "reckless disregard for the truth," or

that the allegedly false statement was necessary for the finding of probable cause.  To the

contrary, the conclusion was "inescapable . . . that the bag emanated from defendant's window:

because the officer saw "the bag being dropped as defendant was jumping out of his window."

*Ramos*, 162 N.Y.S. at 337.

Under the *Franks* doctrine, "a defendant may contest a warrant by challenging the

veracity of the supporting affidavit."  *United States v. Powell*, 634 F. Supp. 3d 48, 52 (E.D.N.Y.

2022) (citing *Franks*, 438 U.S. at 154).  "To be entitled to a *Franks* hearing, a defendant must

make 'a substantial preliminary showing' of (1) falsity, 'that a false statement . . . was included

by the affiant in the warrant affidavit,' (2) knowledge, that the affiant made the allegedly false

statement 'knowingly and intentionally, or with reckless disregard for the truth,' and (3)

---

[14] The trial court stated that "the defendant's motion fails to set forth sufficient facts for a [sic] *Alfinito* hearing." *Id.*  In *People v. Alfinito*, 211 N.E.2d 644 (N.Y. 1965), the New York Court of Appeals held that a defendant may challenge the statements in a search warrant as perjurious, but that the burden of proof is on the person attacking the warrant and that "any fair doubt arising from the testimony at the suppressal hearing as to whether the affidavit's allegations were perjurious should be resolved in favor of the warrant since those allegations have already been examined by a judicial officer in issuing a warrant."  *Id.* at 646.

materiality, that 'the allegedly false statement is necessary to the finding of probable cause.'"
*United States v. Sandalo*, 70 F.4th 77, 85 (2d Cir. 2023) (quoting *Franks*, 438 U.S. at 155–56).

Respondent first argues that the Court should not consider Petitioner's *Franks* claim because it is moot. Respondent asserts that the *Franks* claim relates solely to the validity of the police search of Petitioner's apartment, and the remedy for any violation would be suppression of evidence obtained in that search, but that no evidence was obtained in that search that was relevant to Petitioner's convictions for criminal possession of a weapon or reckless endangerment. Dkt. No. 12 at ECF p. 35. Rather, the evidence obtained in that search was relevant solely to Plaintiff's marijuana conviction, which has since been vacated and expunged. *Id*.

Petitioner's *Franks* claim is not moot. A claim is rendered moot when it "no longer present[s] a case or controversy under Article III, § 2, of the Constitution." *Spencer v. Kemna,* 523 U.S. 1, 7 (1998). The critical question is whether "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 586 U.S. 165, 172 (2013). For example, habeas petitions challenging criminal convictions are not moot—even when the petitioner is released from custody—if such convictions have "collateral consequences" that continue to affect the petitioner post-release. *Perez v. Greiner*, 296 F.3d 123, 125 (2d Cir 2002); *Pollard v. United States*, 352 U.S. 354, 358 (1957).

Putting aside the issues presented by *Stone v. Powell,* 428 U.S. 465 (1976), discussed *infra*, the Court could grant relief to Petitioner if it concluded that the search of his apartment was unlawful and the introduction of the fruits of that search at trial was unconstitutional. Respondent's argument rests upon the predicate that since marijuana was discovered during the search and introduced at trial and since the marijuana conviction has been vacated, the

introduction in evidence of the fruits of the search could not have affected Petitioner's other convictions and thus the Court would be without power to grant relief. But that predicate is faulty. The evidence from the search introduced at trial was not limited to the marijuana. It also included mail belonging to Petitioner, documents establishing Petitioner as the owner of the apartment, male clothing in two of the bedrooms, and female clothing and a baby's crib in the third bedroom, all of which was relevant to whether Petitioner in fact lived in that apartment with the flowerpot from which a witness saw shots being fired and whether any other men might live there who could have fired the shots. Dkt. No. 13-4 at ECF pp. 408, 501–02, 546–48, 609. Police also recovered fentanyl and other drug paraphernalia in the apartment and introduced this evidence at trial. *Id.* at ECF pp. 163, 408, 707, 751–52.

A court could grant Petitioner effective relief if it found that the search was unlawful and the introduction of this evidence unconstitutional. The Court would have the power, depending on the impact of the evidence on the counts of conviction, to vacate the judgment of conviction. *See, e.g.*, *United States v. Alexander*, 888 F.3d 628, 637–38 (2d Cir. 2018) (vacating conviction where evidence was admitted that was obtained in violation of Fourth Amendment); *Johnson v. U.S.*, 313 Fed. App'x 405, 407 (2d Cir. 2009) ("prejudicial spillover" from evidence submitted to support a subsequently vacated conviction can support vacating other conviction in same case under certain circumstances); *United States v. McCoy*, 58 F.4th 72, 75 (2d Cir. 2023) (same); s*ee also Ramchair v. Conway*, 601 F.3d 66, 68–69 (2d Cir. 2010) (district court could grant habeas petitioner a new trial); *cf. U.S. v. Brown*, 805 F.3d 13, 17 (1st Cir. 2015) (affirming conviction because introduction of inadmissible evidence did not influence the verdict in light of other evidence against defendant).

Petitioner's claim does not fail because of mootness but because of the rule set out in *Stone v. Powell,* 428 U.S. 465.  In *Stone v. Powell*, the Supreme Court held that "[w]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  428 U.S. at 494; *see also id.* at 481–82.

In this Circuit, "review of Fourth Amendment claims in habeas petitions [may] be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process."  *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).  "[I]f 'the state by enacting a statutory mechanism for the suppression of evidence obtained by unlawful search and seizure, has provided an opportunity fully and fairly to litigate Fourth Amendment issues, the federal courts may not reexamine those issues on habeas corpus review.'"  *Cepeda v. Morton*, 2020 WL 6382052, at *4 (S.D.N.Y. Oct. 30, 2020) (quoting *Shaw v. Scully*, 654 F. Supp. 859, 863 (S.D.N.Y. 1987)).

Neither circumstance is present here.  New York has provided corrective procedures to redress Fourth Amendment violations.  "[T]he 'federal courts have approved New York's procedure for Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law 710.10 *et seq.* as being facially adequate."  *Capellan*, 975 F.2d at 70 n.1 (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989)); *see Elliot v. Kirkpatrick*, 2020 WL 6690650, at *5 (S.D.N.Y. Nov. 13, 2020) ("New York's procedure for litigating Fourth Amendment claims is facially adequate.") (internal quotation marks and citations omitted); *Cepeda*, 2020 WL 6382052, at *4

("New York provides criminal defendants an opportunity to litigate Fourth Amendment search and seizure issues before trial through a suppression hearing under N.Y. Crim. Proc. Law 710.30.") (citations omitted).

Moreover, Petitioner has not shown, and cannot show, an unconscionable breakdown in the underlying process. He was given the chance to present evidence to support an entitlement to a *Franks* hearing, and the state court found that he failed to do so. "[A] mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan*, 975 F.2d at 72. An unconscionable breakdown in the underlying process occurs when "the totality of state procedures allegedly did not provide rational conditions for inquiry into federal law." *Id.* at 70. "Examples of unconscionable breakdowns in the underlying procedure include, but are not limited to, 'the bribing of a trial judge, the government's knowing use of perjured testimony, or the use of torture to extract a guilty plea, all without opportunity to obtain state review.'" *Cepeda*, 2020 WL 6382052, at *5 (quoting *Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988), *aff'd*, 852 F.2d 59 (2d Cir. 1988) (per curiam)). Petitioner does not identify any such facts here.

Finally, Petitioner's invocation of other constitutional provisions, without more, does not allow him to escape the bar imposed by *Stone v. Powell*. Petitioner alleges that his "rights to Due Process of Law and Equal Protection of the Law [were violated] when determination was made to refuse to conduct a *Frank's Hearing* with respect to the warrant application made for the search of Petitioner's apartment." Dkt. No. 11 at ECF p. 9 (italics in original). Petitioner cannot "plead around" *Stone v. Powell* by mentioning Due Process and Equal Protection. *See Castillo v. Miller*, 2005 WL 1036346, at *5 (S.D.N.Y. May 4, 2005); *see also Ferron v. Goord*, 255 F. Supp. 2d 127, 132–33 (W.D.N.Y. 2003) (petitioner "cannot avoid the outcome required by *Stone*

by phrasing his Fourth Amendment claim in terms of a due process violation . . . [His] **"**attempt to seek an end-run around *Stone* 's clearly established barrier to habeas review by 'transmogrifying' his barred Fourth Amendment claim into a due process claim must fail"); *Connolly v. Artuz*, 1995 WL 561343, at *7 (E.D.N.Y. Sept. 15, 1995) (petitioner "seeks to avoid the outcome mandated by *Stone* by cloaking his purported Fourth Amendment violation in the garb of a due process claim," but this attempt "must fail").

### III.    Amendment of the Indictment

Petitioner's third ground for relief is that his due process rights were violated when the trial court struck from the Indictment the language that Petitioner violated state law by carrying a firearm "outside of his home or place of business," leaving him to be tried on charges of being a felon in possession of a loaded firearm.  Dkt. No. 11 at ECF pp. 12–13.  He also alleges that the amendment violated state statutory and constitutional law.  *Id*. at p. 13.

The second count of the Indictment, as returned by the Grand Jury, charged that Petitioner committed a violation of New York Penal Law § 265.03(3) as follows: "The defendant, in the County of New York, on or about June 22, 2015, possessed a loaded firearm, said possession not being in defendant's home or place of business."  Dkt. No. 13-2 at ECF p. 91.  New York Penal Law 265.03(3) makes it a class C felony for a person to possess a loaded firearm with the intent to use it unlawfully against another.  N.Y. Penal Law § 265.03(3).  It provides an exception if the possession takes place in the defendant's "home or place of business," *id*., but that exception is not applicable when, as specified by Section 265.02 of the Penal Law, the defendant "has previously been convicted of any crime," *id.* § 265.02(1); *see People v. Velasquez*, 972 N.Y.S.2d 678 (2d Dept. 2013) (holding that where the defendant has been previously convicted of any crime, the possession of a loaded firearm is a class C felony regardless of whether the possessor possessed the firearm in his home or place of business).

The same day that the Grand Jury returned the Indictment, the New York District Attorney served Petitioner with a Special Information identifying Petitioner's prior conviction, on January 11, 2013, on charges of criminal possession of a controlled substance in the third degree, as the basis for the charge in the Indictment of the violation of New York Penal Law § 265.03(3). Dkt. No. 13-3 at ECF p. 3.[15]

At trial, and over Petitioner's objection, the trial court struck the language regarding Petitioner's "home or place of business" from the Indictment. Dkt. No. 13-4 at ECF pp. 197–98. Petitioner argues that allowing amendment of the Indictment deprived him of the notice to which he was entitled under both federal and state law, impeded his ability to prepare a defense, and resulted in him being tried on a charge not returned by the state Grand Jury. Dkt. No. 11 at ECF p. 12. He also argues that the change to the Indictment violated N.Y. C.P.L. § 200.70 and the New York Constitution. *Id.* at p. 13.[16]

The Appellate Division rejected Petitioner's argument that the trial court unlawfully amended the Indictment by deleting language that Petitioner's weapon possession did not occur in his "home or place of business." *Ramos*, 162 N.Y.S. at 336. The court reasoned that

---

[15] N.Y. C.P.L. § 200.60 provides, in relevant part, that "[w]hen the fact that the defendant has been previously convicted of an offense raises an offense of lower grade to one of higher grade and thereby becomes an element of the latter, an indictment for such higher offense may not allege such previous conviction," but that "[a]n indictment for such an offense must be accompanied by a special information, filed by the district attorney with the court, charging that the defendant was previously convicted of a specified offense," and that the defendant is to be arraigned on the special information. *See People v. Cooper*, 583 N.E.2d 915 (N.Y. 1991).

[16] N.Y. C.P.L. § 200.70 provides, in relevant part: "At any time before or during trial, the court may, upon application of the people and with notice to the defendant and opportunity to be heard, order the amendment of an indictment with respect to defects, errors or variances from the proof relating to matters of form, time, place, names of persons and the like, when such an amendment does not change the theory or theories of the prosecution as reflected in the evidence before the grand jury which filed such indictment, or otherwise tend to prejudice the defendant on the merits."

Petitioner was indicted and tried on the theory that he possessed a loaded firearm and had previously been convicted of a crime in violation of Penal Law §§ 265.03(3) and 265.02(1) and that the additional language contained in the Indictment was properly deleted as it amounted to "misleading language suggesting an inapplicable alternative theory." It found that Petitioner had "full notice of the People's actual theory," which was that his possession of a firearm "was a felony only because of [his] prior conviction." *Id.*

The state court decision is not contrary to clearly established federal law as determined by the Supreme Court nor did it involve an unreasonable application of clearly established federal law. The Fifth Amendment's right to a grand jury indictment "has not been incorporated against the states through the Fourteenth Amendment." *LanFranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002) (citing *Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972); *Hurtado v. California*, 110 U.S. 516, 534–35 (1884)); *see also U.S. v. Logan*, 845 F. Supp. 2d 499, 518 (E.D.N.Y. 2012) (challenges to the sufficiency of an indictment are generally not cognizable on habeas review); *Whaley v. Graham*, 2008 WL 4693318, at *8 (E.D.N.Y. Oct. 15, 2008) (the form of a grand jury indictment is statutorily created and thus any alleged defects do not provide grounds for habeas relief). There is no federal constitutional right to indictment by a state grand jury. *See Allen v. Capra*, 2021 WL 2206466, at *5 (S.D.N.Y. June 1, 2021); *Fields v. Soloff*, 920 F.2d 1114, 1116–18 (2d Cir. 1990) (noting that many states have eliminated the grand jury indictment entirely, but New York continues to guarantee indictment by grand jury for felony charges). Because Petitioner had no federal right to an indictment from a grand jury in the first place, it follows that he also had no right to have the Grand Jury Indictment itself state that he had a prior conviction which made it unlawful for him to possess a loaded firearm without regard to whether he possessed the loaded firearm in his apartment.

Indeed, it would have violated New York State law for the prosecutor to have requested the Grand Jury to return an indictment containing a reference to Petitioner's prior felony. Under New York law, to the extent a prior conviction becomes an element of a crime charged in an indictment, prosecutors must serve a Special Information with the previously convicted offense and are not permitted to put the previously convicted offense in the indictment. N.Y. C.P.L. § 200.60. Federal constitutional law does not prohibit New York commands to protect the rights of criminal defendants. *See, e.g.*, *People v. Cooper*, 78 N.Y.2d 476, 480–81 (N.Y. 1991) ("The history of CPL 200.60 reflects the Legislature's abiding concern that permitting a jury to learn of prior convictions without first offering a defendant the chance to exclude them jeopardized the right of fair trial" and thus rather than refer to the previous conviction in the indictment, the prior conviction "must be charged by special information filed at the same time as the indictment [and] [a]n arraignment must be held on the special information outside the jury's presence."); *People v. Keener*, 61 N.Y.S.3d 158, 161 (3d Dep't 2017) (purpose of N.Y. C.P.L. 200.60 is to provide defendant an opportunity to stipulate to prior convictions to avoid prejudicial impact of having the prior offense proven to the jury); *cf. People v. Alston*, 92 N.Y.S. 3d 18, 20 (1st Dep't 2019). Petitioner's grand jury right claim fails.

Even absent a right to indictment by grand jury, a defendant is constitutionally entitled to notice of the charges against him. *See LanFranco*, 313 F.3d at 119; *Perez v. McIntosh*, 2022 WL 4229257, at *6 (S.D.N.Y. Sept. 14, 2022), *report and recommendation adopted*, 2024 WL 455219 (S.D.N.Y. Feb. 5, 2024); *Swail v. Hunt*, 742 F. Supp. 2d 352, 363 (W.D.N.Y. 2010). But Petitioner does not identify a failure to provide him notice. On the same day Petitioner was indicted, the District Attorney filed a Special Information notifying Petitioner, as required by N.Y. C.P.L. § 200.60, that he was charged with criminal possession of a weapon in violation of

Penal Law § 265.03(3) in light of his prior felony conviction in 2013.  Dkt. No. 13-3 at ECF p.

3.[17]  Thus, from the beginning, the District Attorney proceeded as he would if the charge were

based on a prior conviction.  The trial court also noted that the prior conviction was presented to

the Grand Jury and that the "minutes do not bear out that [the grand jury] voted out the crime for

. . . possessing a loaded gun in the defendant's home or place of business."  Dkt. No. 13-4 at ECF

pp. 197–98.  As the Appellate Division determined, the removal of the language did not change

the theories of the prosecution as reflected in the evidence before the Grand Jury.  *Ramos*, 162

N.Y.S. at 336.  The evidence of the prior conviction was presented to the Grand Jury and in

compliance with N.Y. C.P.L § 200.60, the prior conviction was alleged in the Special

Information served with the indictment.  *Id*.  Moreover, Petitioner had actual notice of the

prosecution's theory that Petitioner filed a pistol from his apartment that he later threw out the

window as he was fleeing from police, which clarifies that the possession count was only a

felony because of the prior conviction.  *Id*.

    The removal of the home or business language did not violate Petitioner's constitutional

rights.  As the state court correctly reasoned, if "an indictment contains misleading language

suggesting an inapplicable alternative theory, such a theory should be removed from the jury's

consideration."  *Id*. at 336–37; *see also U.S. v. Miller*, 471 U.S. 130, 137 (1985) (mere

surplusage in indictment can be rejected).  The "home or business" exception was inapplicable

because Petitioner had a prior felony conviction.  Thus it was proper to remove it from the

---

[17] The Special Information had a typographical error that stated Petitioner was being charged
with criminal possession of a weapon in the "third degree" when it should have said "second
degree."  Dkt. No. 12 at ECF p. 4.  However, the error was clear, since the statute cited in the
Special Information only relates to criminal possession in the second degree and the Indictment
correctly identified that it was criminal possession in the second degree.  *Id*.; *see also* Dkt. No.
13-2 at ECF p. 91.

Indictment, and Petitioner was not denied notice. The Supreme Court has held that "[a]s long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime." *Id*. at 136. Under the Fifth Amendment, as long as the indictment informs the defendant of the core of criminality to be proven at trial, it does not violate the Constitution for a district court to remove from it language that charges "more than was necessary" to establish the violation. *United States v. Rosenthal*, 9 F.3d 1016, 1023 (2d Cir. 1993). It follows that where, as here, the Indictment also alleged more than was necessary to establish a violation of New York State law and where Petitioner was informed by the Special Information of the core of the criminality with which he was charged, it cannot be a violation of clearly established federal law for the state court to have deleted language that was unnecessary for the jury to consider to convict him of the state offense.

Finally, Petitioner's claim that the trial court violated N.Y. C.P.L. § 200.70 and New York State's Constitution by allowing the deletion of the language from the indictment was rejected by the Appellate Division and is not cognizable on federal habeas review. *See Rodriguez v. Smith*, 2015 WL 6509153, at *7 (S.D.N.Y. Oct. 28, 2015) ("Challenges to the sufficiency of a state indictment are generally not cognizable on habeas review."); *see also Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991); *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 378 (E.D.N.Y. 2013) (claims premised on New York criminal procedural law are not cognizable on federal habeas review); *Guerrero v. LaManna*, 325 F. Supp. 3d 476, 483–84 (S.D.N.Y. 2018) (claims based on New York State's Constitution and New York state law not cognizable on federal habeas petition).[18]

---

[18] Plaintiff invokes "Equal Protection of the Law" with respect to all three of the grounds for his

## CONCLUSION

The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this opinion and order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  *Cf. Coppedge v. United States*, 369 U.S. 438, 444–45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated: September 27, 2024
         New York, New York

LEWIS J. LIMAN
United States District Judge

---

habeas motion, see Dkt. No. 11 at ECF pp. 5, 9, 13; Dkt. No. 15 at ECF pp. 4, 6, but fails to allege any facts that would give rise to an equal protection claim.  Plaintiff has not alleged that he was discriminated against on the basis of his membership in a protected class or even that as a "class of one" he was intentionally treated differently irrationally or based on animus.  *See Seabrook v. City of N.Y.*, 509 F. Supp. 2d 393, 400–01 (S.D.N.Y. 2007).  That a court reaches a decision with which a party disagrees because he believes the facts of his case merit a different legal conclusion is not a violation of the Equal Protection Clause.